IN THE COURT OF
CRIMINAL APPEALS

                                   OF
TEXAS

 

                                                                              

                                                               NO. PD-1932-04



 

 

                                          KEITH LASHONE HOGANS, Appellant

 

                                                                             v.

 

THE STATE OF TEXAS

 



                   ON APPELLANT=S
PETITION FOR DISCRETIONARY REVIEW

                               FROM
THE FOURTEENTH COURT OF APPEALS

                                                             HARRIS
COUNTY



 

Cochran,
J., delivered the opinion of the Court in which Price, Womack, Keasler, Hervey and Holcomb, JJ., joined.  Johnson, J., filed a concurring opinion.  Keller, P.J., filed a dissenting
opinion.  Meyers, J., filed
a dissenting opinion.

 

                                                                     OPINION 

 








In this case we hold that a court of
appeals has jurisdiction to consider the merits of a claim that temporally
arises before the act of adjudication if the claim directly and distinctly
relates to punishment rather than to the decision to adjudicate.[1] 
However, because appellant raised a claim of ineffective assistance of counsel
that relates to the decision to adjudicate, it was properly dismissed on
jurisdictional grounds by the court of appeals.[2]


I.

Appellant was originally charged with
the felony offense of aggravated assault after he pulled a gun on a driver he
had rear-ended.  He entered a no contest plea to the charge.  The trial court
deferred adjudication of guilt and placed him on community supervision for
seven years.  

Five years later, appellant was
involved in a pair of auto accidents with Cordell Roberts.  The State filed a
motion to adjudicate based on three alleged violations of his community
supervision conditions:  assault of Cordell Roberts; failure to report to his
community supervision officer; and failure to pay supervision fees.  The State
offered evidence on all three counts, but most of the evidence presented at the
adjudication hearing related to the assault.








At the adjudication hearing, Cordell
Roberts testified that appellant rear-ended his car as Mr. Roberts, with two
female friends, pulled out of a Jack-in-the-Box restaurant.  When appellant got
out of his car, came up to Mr. Roberts and threatened to kill him, Mr. Roberts
drove off in fear.   Appellant followed him and rear-ended him again, this time
Aon purpose.@  Appellant again approached Mr.
Roberts and again threatened him, screaming, AI=m going to whip your ass.@  Appellant reached inside Mr.
Roberts=s car and removed the keys from the
car=s ignition.  Appellant then pulled
Mr. Roberts out of his car, threw him against the car, and punched him in the
jaw.

Appellant also testified at the
adjudication hearing.  He said that he had just picked  up his two children at
school when Mr.  Roberts pulled out of a parking lot, hit appellant=s car, and then fled the scene. 
Appellant followed him to get his license plate number.  When Roberts made a
sudden U-turn, appellant tried to avoid hitting him but his car=s brakes locked.  Appellant testified
that after this second collision, he walked up and reached into Roberts=s car to grab his keys to prevent
Roberts from fleeing again.  Appellant said that Roberts followed him as
appellant walked back to his own car.  Roberts tried to grab his keys back, but
when appellant resisted, Roberts punched him in the head.  Appellant then hit
back in self-defense.  

Other defense witnesses testified
that appellant did not appear angry after the car wreck, that he was worried
about his kids in his car, and that he had asked that the police be called.

Defense counsel also called appellant=s children (ten-year-old Jerron and
eight-year-old Kieara) to testify during the adjudication hearing.  Both
children testified that appellant punched Roberts, but that Roberts never hit
appellant.[3]  








At the end of the adjudication
hearing, the trial judge found Anot true@ on the failure to pay allegation, and Atrue@ on the failure to report and assault
allegations.  In adjudicating appellant on the original aggravated assault
charge, the trial judge said that he found the assault allegation to be the
more important violation, in part because appellant Aput his own children in high risk.@  After adjudicating appellant=s guilt, the trial judge began the
sentencing hearing.

During the sentencing hearing,
Raynard Fontenot testified about the original Aroad rage@ incident for which appellant had
been placed on deferred adjudication.   Mr. Fontenot testified that the traffic
was bumper-to-bumper on Richmond Avenue in Houston when appellant ran into him
at a very slow speed.  Mr. Fontenot got out of his car to see what the damage
was.  Appellant also got out of his car, with his hand behind his back.  When
Mr. Fontenot asked appellant what he had in his hand, appellant pulled out a
gun, walked toward Mr. Fontenot, and put the gun to his neck.  The two
exchanged a few words, and then, when a police officer walked up, appellant
fled.  

The state closed its punishment case,
and the defense put on three witnesses who all testified that they thought
appellant was still a good candidate for regular probation.








Appellant appealed his conviction on
the ground that he received ineffective assistance of counsel during the
adjudication hearing when his attorney called his children to testifyBan error which he alleged also
affected his rights in the punishment phase. The court of appeals dismissed the
appeal for lack of jurisdiction, stating, in part, that A[a]n appeal may only be taken from
the proceedings occurring after the adjudication of guilt, such as assessment
of punishment.@[4] 

II.

Under Article 42.12, Section 5(b) of
the Code of Criminal Procedure, if the defendant violates a condition of
deferred-adjudication community supervision, he is entitled to a hearing Alimited to the determination by the
court of whether it proceeds with an adjudication of guilty on the original
charge.  No appeal may be taken from this determination.@[5]  The Texas Legislature has decreed
that the courts of appeals do not have jurisdiction to consider claims relating
to the trial court=s determination to proceed with an adjudication of guilt on
the original charge.[6]  Thus, if an
appeal raises a claim of purported error in the adjudication of guilt
determination, a court of appeals should dismiss that claim without reaching
the merits.[7] 








 However, that same statute
continues: AAfter an adjudication of guilt, all proceedings, including assessment of
punishment, pronouncement of sentence, granting of community supervision, and
defendant=s appeal continue as if the adjudication of guilt had not been deferred.@[8]   In Issa v. State[9]
we held that when Aa trial court finds that an accused has committed a violation
as alleged by the State and adjudicates a previously deferred finding of guilt,
the court must then conduct a second phase to determine punishment.@[10]    

Thus, the defendant is entitled to a
punishment hearing after the adjudication of guilt, and the trial judge Amust allow the accused the
opportunity to present evidence@ in mitigation of punishment.[11] 
In later cases, however, we decided that this requirement is satisfied as long
as the defendant has an opportunity to present evidence in mitigation of guilt,
either before or after adjudication.[12]  For
example, we stated in Pearson v. State,  AIt is immaterial that the opportunity
to present evidence came before the actual words of adjudication.@[13] 








            Thus, Aalthough an appellant cannot appeal
the trial court=s decision to adjudicate guilt, an appellant sentenced under
a guilty plea agreement can appeal aspects of the >second phase to determine punishment.=@ [14] 
Consequently, while a defendant may not raise on direct appeal a claim of
ineffective assistance (or even an absence) of counsel that allegedly occurred
at the proceeding to adjudicate guilt,[15]
he may raise on direct appeal a claim of ineffective assistance that allegedly
occurred at the punishment proceeding.[16]


The question remains:  when
mitigation or other punishment evidence is presented before adjudication, is it
still Asecond phase@ evidence that may be the subject of
an appeal?  The State argues that the answer is noBnothing that occurs before
adjudication can be appealed because of the Section 5(b) rule that prohibits an
appeal from a trial court=s determination to adjudicate guilt on the original charge. 
Appellant, on the other hand, argues that Aanything that contributes to
punishment must be reviewed, even if it happened during the adjudication
hearing.@  








Both of these positions are too
extreme.  As good advocates, both the State and the defense seek a touchdown,
but the law lies on the fifty-yard line.  As to the State=s position:  if a defendant is not
absolutely entitled to a separate sentencing hearing from which he may appeal
punishment issues, then his right to appeal should not be thwarted by rolling the
adjudication and sentencing hearings into one, thereby denying him an appeal of
all aspects of the punishment evidence or procedures.  At least in the context
of combined adjudication-sentencing hearings, evidence and procedures that
relate directly and distinctly to the sentence imposed are cognizable on direct
appeal even when the events themselves occur before the magic words, AI find you guilty.@  








On the other hand, appellant=s position proves too much; all
evidence or procedures Acontribute@ to punishment, at least in the sense that, but for the
decision to adjudicate, there would be no punishment to assess.[17]  
The fact that a defendant may appeal sentencing claims that temporally occur
during  adjudication Aproceedings@ does not give an appellate court jurisdiction to consider
any issue framed as a punishment issue.[18] 
Rather, the asserted error must directly and distinctly concern the second
phase; the claim must, on its face, relate to the sentence imposed, not to the
decision to adjudicate.  Any other rule would eviscerate the Section 5(b) bar
on direct appeals of the decision to adjudicate.  Appellant=s proposed ruleBthat any error occurring during the
adjudication hearing which can be shown to have affected punishment is
cognizableBdoes just that.  

                                                                            III.

            In appellant=s case, the adjudication and
punishment hearings were separate, and the allegation of ineffectiveness was
rooted in counsel=s actions at the adjudication hearing.  Appellant claims that
his trial counsel=s act of calling his children to testify was constitutionally
deficient assistance because the children contradicted appellant=s version of events.  Appellant
argues that the Aineffectiveness extended to the punishment the court
assessed, which was demonstrated by the fact that the court referred to the
defense=s own evidence just before sentencing
appellant to imprisonment, when he was eligible for community supervision.@  In sentencing appellant, the court
stated,








Well, besides your technical alleged violations and the
one I found, which is not significant enough to revoke or adjudicate,  I would
not have done it on the technical reporting; but you come in here on a case
from May the 7th, 2003, where you do have your two minor children in
the car, Kieara and [Jerron].  You have a minor fender bender.  And I=m not concerned about whose fault it was; but the way
you reacted.  You took out after the guy, and by your own testimony, and
Defense Exhibit 1 and 2, it was a major collision.  It appears that was a
rear-end collision.  It wasn=t a tap.  The
real truth is you went after the guy with the kids in the car and endangered
their lives and hit the Complainant, Mr. Roberts.  Which not only did you
endanger your children, you endangered Mr. Roberts, his passengers.

Then after doing that, that didn=t stop you.  You go out and take the law into your own
hands and you go and retrieve the car keys of this man, which is a pretty
dangerous act.  That man, if it had been another person, maybe had a gun or
something, there may have been a dead body out there.  I don=t know where you=re
coming from.  I don=t quite understand it.  You are now, I consider, a
danger to society.  What=s going to happen next time you go out and have a
minor fender bender?  I don=t know what
happens to you, but the next time it might result in a death.  And one of the
responsibilities of the Court is to protect society from defendants.  It=s not only looking out for your welfare and what we=re going to do to rehabilitate you at some point, we
have to look at protecting society.  And to keep you on probation so you can go
out and have another temper tantrum when you have another fender bender and
something else triggers you and you pull a gun and assault somebody, it may be
more dangerous than this Court, and me personally, would be very responsible
for.

I=m not going to
assess your punishment at 20 years, but I=m
going to assess your punishment at five years in the Institutional Division of
the Texas Department of Criminal Justice.

 








The trial judge=s statement does indeed show that he
based his punishment decision on the evidence of the more recent Aroad rage@ incident that formed the basis of
the motion to adjudicate.  But that same statement shows that the judge also
based his adjudication decision on the evidence of the more recent Aroad rage@ incident.  In this case the
appellate claimBineffective assistance in calling appellant=s children as witnesses during the
adjudication hearingBdoes not directly and distinctly affect only the Asecond phase.@[19]  Surely, all evidence offered during
an adjudication hearing will Aaffect@ or Aimpact@ punishment.  This Aspill over@ effect is natural, appropriate,  and
encouraged in our law.[20]  The fact
that evidence may be probative to both the decision to adjudicate and to the
assessment of an appropriate punishment does not convert adjudication evidence
into punishment evidence.[21]

 Here, the court of appeals correctly
dismissed appellant=s appeal, not because the purported error temporally occurred
during the adjudication hearing, but because the purported error directly
affected the decision to adjudicate.  Its effect upon the trial court=s sentencing decision was simply part
of the natural Aspill over@ effect of all evidence that  shows the circumstances under
which an offense occurred.  That evidence is offered to prove criminal
liability even though it may also be highly probative in determining an
appropriate sentence.  

Therefore, we affirm the court of
appeals=s dismissal of appellant=s claim.

Delivered:  November 9, 2005

Publish









[1]
We granted appellant=s
sole ground for review:

The court of appeals erred in holding that appellant could
not appeal his conviction, when the error claimed affected the punishment
assessed, as well as the trial court=s
decision to adjudicate guilt.





[2]
Hogans v. State, No. 14-03-00897-CR, 2004 Tex. App. LEXIS 8927 (Tex.
App.BHouston [14th
Dist.] 2004).





[3]
Jerron testified that his dad Aturned
around and then hit the boy. . . . The boy didn=t
hit my dad.@ Kieara
testified that, after the second wreck, Amy
dad had got out and took the keys out of the man=s
car, and the man had got out and my dad had punched him and they ran down the
street.  And my dad came back to check on me and Jerron.@  Kieara said she did not see the man Ado anything@ to her dad.





[4]
Hogans v. State, 2004 Tex. App. LEXIS 8927 at *2.





[5] Tex. Code Crim. Proc. art. 42.12, ' 5(b). 





[6]
Wright v. State, 592 S.W.2d 604, 606 (Tex. Crim. App. 1980) (Aunder the terms of the
[deferred adjudication] statute, no appeal may be taken from the hearing in
which the trial court determines to proceed with an adjudication of guilt on
the original charge@). 
The Legislature=s
prohibition includes all complaints related to the trial court=s decision to proceed to an
adjudication of guilt, except for those challenging the trial court=s jurisdiction.  See,
e.g., Nix v. State, 65 S.W.3d 664, 667-68 (Tex. Crim. App. 2001)
(recognizing applicability of Avoid
judgment@ exception to
the deferred adjudication proceedings).





[7]
Connolly v. State, 983 S.W.2d 738, 741 (Tex. Crim. App. 1999); Phynes v.
State, 828 S.W.2d 1, 2 (Tex. Crim. App. 1992) (stating that Aas there is nothing in the
Texas Constitution which guarantees the right to appeal a criminal conviction,
that right is only as provided by the legislature. It naturally follows that
when a legislative enactment says an accused may not appeal a determination to
adjudicate, there is no right to do so@). 






[8]
Tex. Code Crim. Proc. art. 42.12,
' 5(b).





[9]
826 S.W.2d 159 (Tex. Crim. App. 1992).





[10]
Id. at 161.





[11]
Id. 





[12]
Pearson v. State, 994 S.W.2d 176, 179 (Tex. Crim. App. 1999);
Hardeman v. State, 1 S.W.3d 689, 690‑91 (Tex. Crim. App. 1999) (AIssa does not stand
for the absolute right to a separate punishment hearing.  Instead, it requires
the defendant to have the opportunity to present evidence in mitigation of
guilt if not afforded during adjudication.@).





[13]
Pearson, 994 S.W.2d at 179.





[14]
Kirtley v. State, 56 S.W.3d 48, 51 (Tex. Crim. App. 2001).  





[15]
Phynes v. State, 828 S.W.2d at 2.  Certain constitutional claims may, of
course, be raised in a post-conviction petition for writ of habeas corpus.  See
id. (Aeven if
appellant's right to counsel was violated, he may not use direct appeal as the vehicle which to
seek redress@)
(emphasis added); Olowosuko v. State, 826 S.W.2d 940, 942 n.2 (Tex.
Crim. App. 1992) (Overstreet, J., concurring) (noting that defendant=s complaint concerning the
voluntariness of his plea of Atrue@ was, in reality, a
challenge to the trial court=s
decision to proceed with an adjudication of guilt on the original charge, and
his remedy, if any, is by way of post-conviction writ of habeas corpus); Tillman
v. State, 919 S.W.2d 836, 838 (Tex. App.BFort
Worth 1996, pet. ref=d).





[16]
Kirtley, 56 S.W.3d at 51.





[17]
For example, one might plausibly argue that Abut
for@ Officer Obie=s illegal search of the
probationer, the rock of cocaine would never have been found.  And if the rock
of cocaine were never found, no motion to adjudicate would have been filed and
no decision to adjudicate would have been made, so obviously no sentence would
have been imposed.  In that sense, the purportedly illegal search Acontributes@ to the defendant=s sentence.





[18]
See Butler v. State, 135 S.W.3d 866, 868 (Tex. App. B Houston [1st Dist.] 2004, no
pet.).  The court explained,

Although framed as challenges to post‑adjudication
rulings, i.e., challenges to the trial court=s denial of his motions for new trial and its
evidentiary ruling admitting the prosecutor=s
affidavit, the substance of appellant=s
first, second, and third issues are in fact impermissible challenges to the
trial court=s decision
to proceed to adjudication of appellant=s
guilt.  In support of these issues, appellant argues that his pleas were
involuntary because he was not taking the proper bipolar medication at the time
of the adjudication proceeding.  That appellant=s
first, second, and third issues constitute a challenge to the trial court=s decision to proceed to
adjudication becomes apparent when read in the context of the record in this
case.@

Id.





[19]
Of course, had appellant=s
counsel called his two children to testify to their eyewitness account of the Aroad rage@ incident during the
punishment phase, then the elicitation of that same evidence could have formed
the basis of an ineffective assistance of counsel claim on direct appeal.





[20]
See Tex. Code Crim. Proc.
art. 37.071 ' 2(d)(1)
(Ain deliberating on
the issues submitted under Subsection (b) of this article, the jury shall
consider all evidence admitted at the guilt or innocence stage and the
punishment stage, including evidence of the defendant=s background or character or the circumstances
of the offense that militates for or mitigates against the imposition of the
death penalty@).





[21]
Compare Pearson v. State, 994 S.W.2d at 179.  In that case, prior
to adjudication, Pearson was sworn and testified in response to questions from
his attorney as to Aanything
you would like to address the Court on regarding the sentencing.@ Id.   If Pearson
had raised an ineffective assistance of counsel claim related to this exchange,
although it arose before adjudication, the issue would have been cognizable. 
The purported error, had it been raised, would have been clearly, distinctly,
and directly related to punishment, not to the decision to adjudicate.